Nastt, C. J.
 

 It is a general rule that no action can be supported against a Judge or Justice of the Peace, acting judicially and within the sphere of his jurisdiction, however erroneous his decision. See
 
 Floy
 
 and
 
 BcurTcee,
 
 12 Coke 23; and
 
 Groenvelt v. Burnwell,
 
 1 Lord Ray. 454. This doctrine has ever since been steadily pursued, as being essential to the independence of those entrusted with j udicial authority, by removing from their minds the peril of arraignment for every
 
 *341
 
 judgment they may pronounce. See
 
 Cunningham
 
 v.
 
 Dilliard,
 
 4 Dev. and Bat. 351, and
 
 Gov.
 
 v. McAfee, 2 Dev. 15. Die defendants were inspectors of an election for members of the General Assembly, and refused to receive the vote of the plaintiff, and for this the action is brought. A question of the the admissibility of evidence as to his qualification as a voter arose in the course of the trial below, of which we take no notice, for the reason, that if his Honor was correct on the legal question decided by him, the other could not arise. By the Act of 1854, Rev. Code, ch. 52, sec. 10, after providing for the appointment of inspectors of elections, the law proceeds : “ and the inspectors shall have the
 
 sole cmd exclusive Tight
 
 to judge of the qualification of voters, &c.” By this Act the inspector has not only the ministerial right to hold the polls and receive the votes, but the judicial power to adjudge upon the right of every man to vote at that precinct. It wotddbe monstrous injustice, to hold him answerable for every error of judgment he might commit in discharging his duties. Every person appointed by the County Court is compelled to act, under the penalty of being guilty of a misdemeanor. See sec. 6 of the 52d ch. He must act on the spur of the occasion ; he cannot stop to examine testimony, to see whether the applicant is entitled to vote; it would retard the election, impede its progress, and in many instances, prevent any election at all. The inspector must rely upon that mode of proof, to which the Act has referred him—the oath of the voter'—and of the effect of that he must necessarily, in the language of the Act, be the sole and exclusive judge. This very case furnishes an exemplification of the wisdom of the law, in making the inspectors the sole j udges. An obj ection was raised to the right of the plaintiff to vote. He claimed to be a white man within the provisions of the law; it was alleged that he was of mixed blood, within the fourth degree, which excluded him from the right to vote. To establish the fact, one way or the other, the parties have been obliged to trace his pedigree, by witnesses, to his grand-father and grand-mother. How was it possible for the inspector to investigate
 
 *342
 
 the matter? To hold them answerable for error in judgment, under such circumstances, would be preposterous. If, however, the defendants were not, strictly speaking, judges of the fact which they decided, still they were acting judicially under a public law, and performing a public duty; and if they acted
 
 bona fide
 
 and to the best of their information, they are not answerable. There is no allegation or pretence of a want of good faith on the part of the defendants.
 

 Per Curiam.
 

 There is no error in the judgment below, and it is affirmed.